**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NOTHERN DISTRICT OF OHIO**

| | | |
|---|---|---|
| **JOHN DOE 1,** | ) | CASE NO. 1:22-cv-01287-CAB |
| | ) | |
| Plaintiff, | ) | |
| | ) | JUDGE CHRISTOPHER A. BOYKO |
| vs. | ) | |
| | ) | |
| **CUYAHOGA COUNTY COMMUNITY** | ) | |
| **COLLEGE, et al.** | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**PLAINTIFF JOHN DOE 1'S BRIEF IN OPPOSITION TO DEFENDANTS MOTION TO DISMISS**

# **TABLE OF CONTENTS**

TABLE OF CONTENTS ............................................................................................................. ii

TABLE OF AUTHORITIES ................................................................................................... iii

INTRODUCTION AND SUMMARY OF THE ARGUMENT ................................................ 1

FACTUAL ALLEGATIONS ................................................................................................... 2

STANDARD OF REVIEW: ..................................................................................................... 6

LAW AND ARGUMENT: ....................................................................................................... 7

I.    Plaintiff's Title IX Claim Does Not Fail As a Matter of Law ...................................... 7

   A.    Plaintiff's Deliberate Indifference Claim Does Not Fail as a Matter of Law ................ 7

   B.    Plaintiff's Hostile Environment Claim Does Not Fail as a Matter of Law ................... 10

II.   Plaintiff's § 1983 Claims do Not Fail as a Matter of Law ........................................... 11

   A.    Plaintiff's *Monell* claim against Tri-C Does not Fail as a Matter of Law ..................... 13

   B.    Plaintiff's § 1983 Individual Claims Do Not Fail as a Matter of Law ........................... 16

      1.    The Complaint Does Not Fail to State a 42 U.S.C. § 1983 Claim Against the
Individual Defendants and The Individual Defendants are not Entitled to Qualified
Immunity. ...................................................................................................................... 16

III.  Plaintiff's State Law Claims Do Not Fail as a Matter of Law ..................................... 18

   A.    Defendants Brown and Williams Are Not Immune from Liability on Plaintiff's State
Law Claims. ...................................................................................................................... 18

      1.    The Individual Defendants Acted with Malice, in Bad Faith, Wantonly and
Recklessly ........................................................................................................................ 19

   B.    R.C. 2151.421 Claim ...................................................................................................... 19

   C.    Intentional Infliction of Emotional Distress Claim ........................................................ 20

CONCLUSION ....................................................................................................................... 20

# TABLE OF AUTHORITIES

**Cases**

*Anderson v. Massillon*, 134 Ohio St.3d 380 (2012)........................................................ 19

*Ashcrof v. Iqbal*, 556 U.S. 662 (2009) ................................................................... 1, 7

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ............................................... 1

*Cayman Exploration Corp. v. United Gas Pipe Line Co.*, 873 F.2d 1357 (10th Cir. 1989)............ 7

*Collins v. City of Harker Heights,* 503 U.S. 115 (1992)............................................ 11

*Davis Next Friend LaShonda D. v. Monroe Cty. Bd. Of Educ.*, 526 U.S. 629 (1999) .......... 13, 18

*Dias v. City & Cty. Of Denver*, 567 F.2d 1169 (10th Cir. 2009) ................................... 7

*Doe v. Claiborne Cnty., Tenn. By & Through Claiborne Cnty. Bd. of Educ.*, 103 F.3d 495 (6th

    Cir. 1996) ............................................................................*passim*

*Doe v. Cleveland Metro. Sch. Bd. Of Edu.,* Case No. 1:20-cv-0165, (US D. Ct. ND. OH. filed

    July, 31, 2020)........................................................................ 3

*Doe v. Sch. Bd. Of Broward Cty. Fla.*, 604 F.3d 1248 (11th Cir. 2010) ........................... 9

*Doe v. Taylor Independent Sch. Dist.* 15 F.3d 443 (5th Cir. 1994) ............................... 17

*Escue v. N.Okla. Coll.*, 450 F.3d 1146 (10th Cir. 2006)........................................... 9

*Franklin v. Gwinnett County Pub. Schs.,* 5023 U.S. 60 (1992)................................... 8, 11

*Gavitt v. Born*, 835 F.3d 623 (6th Cir. 2016)................................................... 18

*Gebser v. Lago Vista Ind. Sch. Dist.* 524 U.S. 274 (1998) ..................................... 8, 9

*Marconi v. Savage*, 2013-Ohio-3805 (8th Dist. 2013). ........................................... 20

*Massey v. Akron City Bd. Of Educ.*, 82 F.Supp.2d 735 (N.D. Ohio January 19, 2000) ....... 8, 9, 10

*Monell v. Dept. of Soc. Serv.* 436 U.S. 658 (1978)......................................... 13, 14, 16

*Pearson v. Callahan*, 555 U.S. 223 (2009)................................................................ 18

*Scheuer v. Rhodes*, 416 U.S. 232 (1974) .................................................................. 7

*Shively v. Green Loc. Sch. Dist. Bd. of Educ.*, 579 F. App'x 348 (6th Cir. 2014) .................. 7, 10

*TCKETT V. University of Kansas,* 234 F.Supp.3d 1100 (D.Kan. 2017) ........................................ 7

**Statutes**

20 U.S.C. §1681(a) ..................................................................................... 8

42 U.S.C. §1983.................................................................................... *passim*

Civil Rule 12(B)(6) .................................................................................... 7, 18

Ohio Administrative Code at 3354:1-44-01 *et seq* ........................................................ 9

R.C. 2151.421 .......................................................................................... 19

R.C. 2744.02 ........................................................................................... 18

R.C. 2744.03(A)(6) ..................................................................................... 18

Title IX of the Education Amendments of 1972, 20 U.S.C. §1681 ...................................... *passim*

**INTRODUCTION AND SUMMARY OF THE ARGUMENT**

The federal pleading standards set forth by *Iqbal* and *Twombly* require that "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcrof v. Iqbal*, 556 U.S. 662, 678 (2009) *quoting*, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

Here, Plaintiff has alleged that he was sexually assaulted by his teacher, and that all of the individual defendants had actual knowledge that his assailant, Terence Greene, was a long-known pedophile and sexual assailant. In 2002/2003, Greene was indicted and tried for sexual assault of a student while he was a teacher at the Cleveland School for the Arts (CSA). His indictment was reported in the local paper. In 2011, Greene's nephew reported to the Cleveland Police that Greene sexually assaulted him. In 2014, Greene was fired from CSA because of accusations of sexual assault/misconduct from multiple students. In 2015, when he was hired by Tri-C, a background check was performed that clearly placed everyone who received that background check on notice of Greene's prior misconduct. Despite knowledge of the prior history of sexual assault, Tri-C hired Greene and gave him unsupervised and unfettered access to minor children. As he had done repeatedly in the past, Greene sexually assaulted a minor, this time Plaintiff John Doe.

These are sufficient factual allegations that state a plausible claim to survive a motion to dismiss. "Asking for plausible grounds does not impose a probability requirement at the pleading stage" *Twombly, supra*. It merely requires that the facts are "suggestive of illegal conduct." *Twombly*, 550 U.S. at 564, n. 8.

Plaintiff has alleged claims violative of Title IX of the Education Amendments of 1972, 20 U.S.C. §1681 (hereinafter "Title IX") and 42 U.S §1983. These federal statutes have different standards. Title IX claims require that an individual with sufficient authority be placed on actual notice of a potential Title IX violation, and then act in a deliberately indifferent manner in response.

1

Here, the complaint alleges that multiple individuals at Tri-C, with the power to rectify violations, were placed on notice that Terence Greene was a threat to the students at Tri-C. And yet, as alleged in the Complaint, Tri-C did nothing and was deliberately indifferent to this threat. Proximately because of its inaction, John Doe was assaulted. Plaintiff also brings claims under 42 U.S.C. §1983 for violation of his 14th Amendment due process rights and right to bodily integrity.

## FACTUAL ALLEGATIONS

Plaintiff in this case is a minor child who was sexually assaulted by his dance instructor, Defendant Terence Greene (hereinafter "Greene"). Greene was employed as Plaintiff's dance instructor by Cuyahoga County Community College (hereinafter "Tri-C") in its Creative Arts Academy, an after school program that enrolled students ages 3 through 18 years old. Id. at ¶¶12, 32, 37. Prior to his employment with Tri-C, Greene had been employed by the Cleveland Municipal School District's Cleveland School of the Arts (hereinafter "CSA") from 1999-2014. Id. at ¶¶15, 24-26. In 2002, a CSA student reported that he had been repeatedly sexually assaulted by Greene. Id. at ¶16. In 2003, Greene was indicted by the Cuyahoga County Prosecutor on four counts of unlawful sexual conduct with a minor in violation of R.C. 2907.04. Id. at ¶17. The indictment was reported in an article in the Cleveland Plain Dealer. Id. at ¶18. After a bench trial, Greene was acquitted for unknown reason on all four counts. Id. at ¶19-20. In 2004 Greene went back to work at CSA, where he remained until 2014. Id.

On December 7, 2011, Defendant Greene's nephew filed a Cleveland Police Report alleging that Greene repeatedly sexually assaulted him from the time he was seven years old until December 5, 2011. Id. at ¶17-18.

In or about July 2014, two former CSA students reported allegations of illegal, criminal sexual contact or assault against Greene, while he was their teacher at CSA. Id. at ¶24. It is believed that CSA notified the Cleveland Police Department of this illegal conduct, and on September 10,

2014, Greene resigned from his position at CSA at the request of CSA administrators. Id. at ¶25-26. To date, eight victims of Defendant Greene have filed a separate suit in US District Court, Northern District of Ohio, alleging claims of sexual assault while they were students at CSA by Greene from 2009-2014. See *Doe v. Cleveland Metro. Sch. Bd. Of Edu.,* Case No. 1:20-cv-0165, (US D. Ct. ND. OH. filed July, 31, 2020).

On September 2, 2015, Greene submitted an application to work as a dance instructor at Tri-C. (ECF #1-1 at ¶27). His application misrepresented his reason for leaving his previous job at CSA, as he wrote, "I started my own company and pursued other job opportunities." Id. As a part of the hiring process, Defendant Amber Smith, a Human Resources Representative for Tri-C, requested a background check on Greene from a screening company called "Truescreen." Id. at ¶4, 28. The report that Defendant Smith received indicated with a red "X" that Greene had been terminated by CSA, was not eligible for re-hire/contract with CSA, and that "[t]he subject had allegations with students." Id. at ¶29. Additionally, in the comment section of the report, it stated: "Please note we have received a negative response from this company regarding the subject's reason for leaving and/or eligibility for re-hire." Id.

On October 8, 2015, in spite of the negative report from Truescreen on October 2, 2015, Defendant Smith sent Greene a letter confirming an offer of employment to Greene for the "part-time position of Instructor Dance at Cuyahoga Community College." Id. at ¶¶29-30. The offer letter included the following clause: "this appointment is contingent upon the satisfactory completion of a background clearance and drug screen." Id. The letter also stated that Greene would be contacted by Defendant Emanuela Friscioni prior to his start date regarding the work schedule. Id. Greene accepted the employment offer. Id. at ¶31. Greene did not pass his background check, nor did he undergo a drug screen. Id. at 62, 68.

Subsequently, on February 21, 2017, Greene presumably received a promotion by way of a letter from Defendant Smith to "the full-time position of Program Manager Dance Mastery." Id. at ¶32. This offer letter also included a clause indicating that "[t]his appointment is contingent upon the satisfactory completion of a background clearance and drug screen." Id. The letter further stated that "[y]ou will report to Emanuela Friscioni, Director Creative Arts Prep. Program." Id. Greene accepted this offer and continued to serve as the Program Manager for Tri-C until he was terminated on or about January 21, 2020, following additional allegations of criminal sexual conduct. Id. at ¶¶33-34. Tri-C did not conduct a background check or a drug screen. Id. at 62, 68.

Emanuela Friscioni at all times was the director of the Creative-Performing Arts Academy at Tri-C. Id. at ¶3. She was Defendant Greene's superior and supervisor as well as an individual responsible for hiring Greene to work at Tri-C. Id. Additionally, Defendant Paul Cox was at all times the Dean of the Tri-C Creative Arts Department, which included and operated the Tri-C Creative Arts Academy. Id. at ¶5. Defendant Cox was an individual responsible for hiring Greene. Id. Defendants Friscioni, Cox and Smith at all times maintained the authority to impose corrective measures in response to threats to the wellbeing of Tri-C students. Id. at 82, 91.

At all times, Defendants Smith, Friscioni and Cox had in their possession the results of Terence Greene's 2015 background check, clearly establishing that he had been terminated by CSA and was not eligible for re-hire/contract with CSA due to allegations made by other students. Id. at ¶¶ 29, 30, 56, 57, 60, 61, 62, 63, 67, 79-80, 82, 88. Despite this background check, all three Individual Defendants put Terence Greene in a position of unsupervised and unfettered access to minor children. Id. At all times, Defendants Smith, Friscioni and Cox knew and had actual knowledge that Greene had been terminated from his previous job teaching minor children because of allegations with students and that he was not eligible for re-hire from his former employer, CSA. Id. At no time did Defendants Tri-C, Emanuela Friscioni, Amber Smith or Paul Cox investigate

Defendant Greene's background once they had actual notice of the prior allegations made against Terence Greene of sexual abuse of students at his prior employer. Id. at 29, 30, 56, 57, 60, 61, 62, 63, 67, 75-77, 79-80, 82, 88. At the time they hired Defendant Greene, and for the entire time he was employed by Tri-C, Defendants Friscioni, Smith and Cox all had actual knowledge of a substantial likelihood that Defendant Greene would sexually abuse minor students. Id. As further evidence of Defendant Cox's knowledge of Greene's history of abusing children, during an initial meeting between Cox and Greene, Defendant Cox told Greene to "keep it professional" in a clear reference to Greene's prior unprofessional conduct at CSA where he sexually abused students. Id. at ¶87. Further, Defendant Tri-C has a number of policies and procedures that were incorporated by the Ohio Administrative Code, safeguarding students from employees by mandating background checks prior to hiring employees. Id. at ¶¶76-77. Tri-C failed to comply with these policies and procedures, in hiring Greene. Id.

In 2015, Plaintiff John Doe was 13 or 14 years old when he first enrolled in the Tri-C Creative Arts Academy as a dance student. Id. at ¶37. From 2015-2018, Plaintiff was a student in the "beginner" class, and during that time, Defendant Greene was not his primary dance instructor. Id. at ¶38. In or about 2018, Plaintiff was promoted to the "intermediate" level, where Defendant Greene became Plaintiff's primary dance instructor. Id. at ¶39. Plaintiff paid $500 per semester to be enrolled in the Tri-C Creative Arts Academy. Id. at ¶40.

On October 17, 2019, following a rehearsal for an upcoming show in Philadelphia, Defendant Greene took several students for pizza at a restaurant on Euclid Avenue in Cleveland, Ohio. Id. at ¶41. Accompanying them was Defendant Charlene Brown, another employee of Defendant Tri-C. Id. Defendant Greene drove Defendant Charlene Brown, along with Plaintiff John Doe, back to Tri-C. Id. Upon returning to Tri-C, Plaintiff believed that Defendant Greene would be driving him home. Id. at ¶42. After getting in Defendant Greene's vehicle alone, Defendant Greene

told Plaintiff he was going to take him to Greene's house to teach him a gospel dance. Id. at ¶43. Upon arrival at Defendant Greene's house, Defendant Greene instructed Plaintiff to go down to Greene's basement to his dance studio and take off his outer clothes, so he was wearing only his dance tights and a T-shirt. Id. at ¶44. Greene's basement did not have a dance studio, only a couch and a television set. Id. at ¶45. Defendant Greene then sexually assaulted Plaintiff, including performing oral sex on him and sodomizing him without a condom. Id. at ¶¶47-50.

Plaintiff reported the sexual assault in January of 2020 to a former high school advisor, who in turn reported the assault to Cuyahoga County Child Protective Services. Id. at ¶54-5. On or about January 22, 2020, Tri-C terminated its employment of Defendant Terence Greene. Id. at ¶¶56-57. As cause for terminating Defendant Greene, Defendant Tri-C and Defendant Cox specifically did NOT cite the assault on Plaintiff John Doe, but instead cited the results of the 2015 background check and rescinded his offer of employment. Id. at ¶56-57. The letter to Greene from Tri C stated, ". . . [c]ollege had things brought to our attention also which caused us to take a **look back at the background check** that was performed in **October, 2015**. As a result of this review, the College has made the decision to **separate you** from the College. We are not going to discuss what the matters are that were brought to our attention." (Bold in original). Id. at 89.

Defendants Charlene Brown and Philip Williams were at all relevant times teachers of Plaintiff at Defendant Tri-C. Id. at ¶¶7, 8. Defendants Charlene Brown and Philip Williams had actual notice of Greene's history of sexually abusing minors at CSA. Id. at ¶¶35-36, 41-43, 98, 128-132, 135-136. Despite this knowledge and this history, Defendants Charlene Brown and Philip Williams never reported Greene to anyone, and failed to protect Plaintiff from his sexual assault. Id.

## STANDARD OF REVIEW

The "Federal Rules of Civil Procedure erect a powerful presumption against rejecting pleadings for failure to state a claim." *Cayman Exploration Corp. v. United Gas Pipe Line Co.*, 873

F.2d 1357, 1359 (10th Cir. 1989), *See also Dias v. City & Cty. Of Denver*, 567 F.2d 1169, 1178 (10th Cir. 2009) (describing a motion to dismiss as a "harsh remedy which much be cautiously studied, not only to effectuate the spirit of the liberal rules of pleadings but also to protect the interests of justice.")  To overcome a motion to dismiss for failure to state a claim, a plaintiff need only state a "claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible on its face where "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. In reviewing such a motion, a court must presume as true all well-pleaded facts and "draw all reasonable inference therefrom in the light most favorable to plaintiffs." *Dias*, 567 F.3d at 1178. The question for this court "is not whether a plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims." *TCKETT V. University of Kansas,* 234 F.Supp.3d 1100, 1106 (D.Kan. 2017) *quoting, Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).

> Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. *Id.* at 679, 129 S.Ct. 1937.
>
> *Shively v. Green Loc. Sch. Dist. Bd. of Educ.*, 579 F. App'x 348, 353 (6th Cir. 2014)

Defendants have moved to dismiss Plaintiff's case for failure to state a claim pursuant to Civil Rule 12(B)(6). This motion should be denied as Plaintiff has presented facially plausible claims on each of its counts against each defendant.

## LAW AND ARGUMENT

## I.     PLAINTIFF'S TITLE IX CLAIM DOES NOT FAIL AS A MATTER OF LAW

### A.     Plaintiff's Deliberate Indifference Claim Does Not Fail as a Matter of Law

Title IX provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subject to discrimination under any

education program or activity receiving Federal financial assistance." 20 U.S.C. §1681(a). The Supreme Court has repeatedly recognized an implied right of action for money damages in Title IX cases of sex discrimination, and it has held that a teacher's sexual harassment of a student constitutes actionable discrimination under Title IX. *Franklin v. Gwinnett County Pub. Schs.,* 5023 U.S. 60, 75-76, 112 SCt. 1028, 1037-38, 117 L.Ed.2d 208 (1992). This implied right of action will only lie in the fact of actual notice and deliberate indifference on the part of the school district. *Gebser v. Lago Vista Ind. Sch. Dist.* 524 U.S. 274, 118 S.Ct. 1989, 141 L.Ed.2d 277 (1998).

> To decide if an employer had actual notice of a hostile environment, the Court examines whether a legally appropriate representative of the employer was aware of facts – **via any channel of communication** – indicating a hostile environment. For actual notice to exist, an agent of the school must be aware of facts that indicate a likelihood of discrimination.
>
> *Massey v. Akron City Bd. Of Educ.*, 82 F.Supp.2d 735, 744, 141 Ed.Law Rep. 1104 (N.D. Ohio January 19, 2000).

At the pleading stage, Plaintiff has plead a plausible set of facts that legally appropriate representatives of Tri-C were aware of Terence Greene's history of sexual abuse of children and that they were deliberately indifferent to the same.

Defendants mislead the Court in their standards that are required to state a Title IX deliberate indifference claim based on teacher-student sexual abuse or harassment. (MTD at 4). Defendants suggest that the harassment must occur, and an "appropriate person" must then be given actual notice of the specific abuse that occurred, and then the institution must respond. Id. This is one way a Plaintiff may maintain a Title IX action, but not the exclusive manner.

No Circuit has interpreted the actual notice requirement from *Gebser*, as to require notice of the prior harassment of the Title IX plaintiff himself. *See e.g., Escue v. N.Okla. Coll.*, 450 F.3d 1146, 1154 (10th Cir. 2006)(stating, "although *Gebser* makes clear that actual notice requires more than a simple report of inappropriate conduct by a teacher . . . the actual notice standard does not set

the bar so high that a school district is not put on notice until it receives a clearly credible report of sexual abuse from the plaintiff-student."); *Doe v. Sch. Bd. Of Broward Cty. Fla.*, 604 F.3d 1248, 1257 (11th Cir. 2010). Instead, it must be shown that an appropriate person, one with the authority to respond to a title IX violation, be given actual notice of facts that indicate a likelihood of discrimination. *Massey v. Akron City Bd. Of Educ.*, 82, F.Supp. at 744.

Here, Plaintiff has plead a set of facts that plausibly indicates the same. First, Defendants Smith, Cox and Friscioni were all persons responsible for hiring and supervising Defendant Greene. (ECF#1-1. at ¶¶3, 4, 5, 29-30, 60-63, 67-69, 75-78, 82-83, 87-88, 91). They were all "appropriate persons" with the authority to impose corrective measures. Id. at 82. Prior to the assault on Plaintiff John Doe, these Defendants were all given actual notice of Greene's long history of sexual abuse of minors. Id. at 29-30, 60-63, 67-69, 75-78, 82-83, 87-88, 91. These Defendants were also given actual notice that Greene lied on his employment application. Id. Plaintiff has also plausibly alleged that Defendants failed to comply with their own policies and procedures, which had been incorporated into the Ohio Administrative Code at 3354:1-44-01 *et seq.* (Compl. at ¶76, 77).

In summary, Plaintiff has alleged facts that plausibly establish that Defendant Tri-C employees, with authority to implement corrective measures, were given actual notice of Terence Greene's long history of sexual abuse of minors and failed to do anything about it. Defendant Tri-C was deliberately indifferent to the prior allegations of sexual misconduct involving Defendant Terence Greene prior to hiring him, and prior to allowing him unsupervised and unfettered access to minor children, including Plaintiff John Doe. As a result, Plaintiff John Doe was assaulted in violation of his rights under Title IX. Accordingly, using its judicial experience and common sense, this Court must decide that Plaintiff has asserted a plausible set of facts that would indicate a deliberate indifference claim under Title IX. *Shively*, 579 F. App'x at 353; *Massey, supra.*

In support of their Motion to Dismiss, Defendants assert that in *Doe v. Claiborne Cnty., Tenn. By & Through Claiborne Cnty. Bd. of Educ.*, 103 F.3d 495, 502-03, 512-13 (6th Cir. 1996) the Sixth Circuit held that hiring a teacher who had been found to have previously sexually abused children did not amount to deliberate indifference. (ECF#6-1 at p. 6). This is not what the Sixth Circuit held in *Claiborne*. First, the *Claiborne* court did not address Plaintiff's Title IX claim other than to remand the case back to the district court with instructions to analyze Plaintiff's case under the "hostile environment" sexual harassment claim framework used in Title VII cases. *Id*. at 513-15. Second, in *Claiborne*, the Defendant was presented with evidence of prior sexual abuse allegations against a teacher. The Defendant, in response to that notice, delegated an investigation into that teacher to local Department of Human Services (DHS). *Id.* at 502. The DHS response was interpreted by the Defendant as exonerating the teacher, and the Defendant relied upon that interpretation. *Id*. It was these actual actions and this decision that the Sixth Circuit held did not amount to deliberate indifference.[1] *Id*. at 508-09. In contrast, here, Defendant Tri-C (through its agents who were "appropriate persons") were made aware of substantial evidence of Greene's prior sexual assault and abuse of children and did absolutely nothing. They were deliberately indifferent in response to that knowledge, and as a direct and proximate cause of this deliberate indifference, Plaintiff John Doe was assaulted. As such, Defendants' motion to dismiss should be denied.

**B.      Plaintiff's Hostile Environment Claim Does Not Fail as a Matter of Law**

In addition to its deliberate indifference of the history of sexual abuse of children by Terence Greene, Defendant Tri-C also created and/or subjected Plaintiff to a hostile educational environment in violation of Title IX of the Education Amendments of 1972, 20 U.S.C. §1981, *et seq.* To

---

[1] Notably also, *Claiborne* was not decided at the motion to dismiss stage, but instead was decided on Summary Judgment, with the full analysis of the evidence Plaintiff was allowed to present. The standard was not the same. Id. at 504.

establish a claim for hostile environment, a Plaintiff must plausibly allege (1) He was a member of a protected class; (2) He was subject to unwelcome sexual harassment, which can be in the form of physical conduct of a sexual nature; (3) The harassment complained of was based upon his sex; (4) The harassment had the effect of unreasonably interfering with his educational performance and creating an intimidating hostile, or offensive educational environment; and (5) The existence of respondeat superior liability. *Clairborne, supra* 103 F.3d at 514 adopting Title VII analysis in Title IX hostile environment claims *citing*, *Franklin v. Gwinnett Cty Pub. Sch.* 50. U.S. 60, 63-64 (1992).

Here, Plaintiff has plausibly alleged all of the above. Defendant does not challenge that Plaintiff was a member of a protected class nor that he was subject to sexual abuse by his teacher. He was subject to that abuse on the basis of his sex. (ECF#1-1. at ¶90). Further, the subject of the hostile educational environment created by Defendant Tri-C and Terence Greene caused him to leave Tri-C immediately. Id. at ¶53. Plaintiff would not have been subject to this harassment absent the fact that he was male. Id. at ¶90. Accordingly, Plaintiff has plausibly stated a hostile environment Title IX claim and Defendants' Motion to Dismiss must be denied.

## II.  PLAINTIFF'S § 1983 CLAIMS DO NOT FAIL AS A MATTER OF LAW

To make a claim for damages under 42 U.S.C. §1983, a plaintiff needs to show (1) a deprivation of a federal right (2) committed by an individual acting under color of law. *Collins v. City of Harker Heights,* 503 U.S. 115, 120, 112 S.Ct.1061, (1992).

> A plaintiff must show that, in light of the information the defendants possessed, the teacher who engaged in sexual abuse "showed a strong likelihood that he would attempt to' sexually abuse other students, such that the 'failure to take adequate precautions amounted to deliberate indifference' to the constitutional rights of students.
>
> *Doe v. Claiborne Cnty., Tenn. By & Through Claiborne Cnty. Bd. of Educ.*, 103 F.3d 495, 506 (6th Cir. 1996)

Thus, the first issue is whether plaintiff John Doe suffered a deprivation of a federal right. The Sixth Circuit and the United States Supreme Court has long held there to be a constitutional right to bodily integrity:

> The right to personal security and to bodily integrity bears an impressive constitutional pedigree. As far back as 1891, the Supreme Court recognized that "[n]o right is held more sacred, or is more carefully guarded ... than the right of every individual to the possession and control of his own person, free from all restraint or interference of others, unless by clear and unquestionable authority of law." . . .
>
> ***
>
> We held that children have a substantive due process right to be free from infliction of harm in state-regulated foster homes, *Meador v. Cabinet for Human Resources,* 902 F.2d 474, 476 (6th Cir.), *cert. denied,* 498 U.S. 867, 111 S.Ct. 182, 112 L.Ed.2d 145 (1990), and that "[i]t is well established that persons have a fourteenth amendment liberty interest in freedom from bodily injury," *Webb v. McCullough,* 828 F.2d 1151, 1158 (6th Cir.1987). In *Poe v. Haydon,* 853 F.2d 418, 429–30 (6th Cir.1988), *cert. denied,* 488 U.S. 1007, 109 S.Ct. 788, 102 L.Ed.2d 780 (1989), we recognized that the right to be free of invidious sex discrimination at the hands of the state was clearly established.
>
> ***
>
> Upon consideration, we hold that a schoolchild's right to personal security and to bodily integrity manifestly embraces the right to be free from sexual abuse at the hands of a public school employee. The substantive component of the Due Process Clause protects students against abusive governmental power as exercised by a school. . . . . If the "right to bodily integrity" means anything, it certainly encompasses the right not to be sexually assaulted under color of law. This conduct is so contrary to fundamental notions of liberty and so lacking of any redeeming social value, that no rational individual could believe that sexual abuse by a state actor is constitutionally permissible under the Due Process Clause.
>
> *Doe v. Claiborne*, 103 F.3d at 506

Accordingly, it has been asserted plausibly in Plaintiff's Complaint that he suffered a deprivation of a federal right. (ECF#1-1. at ¶¶42-50, 69). The second question is whether that right was deprived by an individual or entity acting under the color of law. Plaintiff has asserted in his Complaint that his constitutional rights were violated both by Defendant Tri-C and by the Individual Defendants.

**A.    Plaintiff's *Monell* claim against Tri-C Does not Fail as a Matter of Law.**

Plaintiff brought 42 U.S.C. §1983 claims against the individual Defendants and against Tri-C. An educational institution such as Tri-C can be liable for damages for violating a Plaintiff's civil rights, but only if the institution itself caused the constitutional violation. *Monell v. Dept. of Soc. Serv.* 436 U.S. 658, 98 S.Ct. 2018, (1978). In *Monell*, the U.S. Supreme Court held that local government bodies can be sued directly under § 1983, but they cannot be held liable under the doctrine of *respondeat superior*. *Id*. at 694. The local governmental entity may only be held liable under § 1983 for violations of federal law committed pursuant to a governmental "policy or custom." *Id.*

Under *Monell*, accordingly, the plaintiff must show that the Defendant Tri-C established an official policy or tolerated a custom within the school district that led to, caused, or resulted in the deprivation of a constitutionally protected right. *Claiborne, supra* 103 F.3d at 507. The difficulty in any case similar to the instant is that Plaintiff must prove in the negative, that the custom, policy and/or practice led to his constitutional violation. *Doe v. Claiborne,* 103 F.3d at 508. As explained by the *Claiborne* case:

> The analytical difficulty in this case stems from the type of "custom" that the plaintiff claims directly caused Davis to sexually abuse her. Doe does not claim that the School Board had a custom of affirmatively condoning sexual abuse. Clearly, no municipality could have such a policy. Rather, Doe claims that the custom was to *fail to act* to prevent the sexual abuse.

> *Doe v. Claiborne*, 103 F.3d at 508

Indeed, Plaintiff does not assert here that Tri-C had a custom of affirmatively condoning sexual abuse. Instead, Plaintiff's claims against Tri-C are based on customs of failing to act to prevent sexual abuse in light of substantial evidence of risk that Plaintiff would be assaulted by Defendant Greene. *Id*.

To state a municipal liability claim under an "inaction" theory, Doe must establish:

> (1) the existence of a clear and persistent pattern of sexual abuse by school employees;
> (2) notice or constructive notice on the part of the School Board;
> (3) the School Board's tacit approval of the unconstitutional conduct, such that their deliberate indifference in their failure to act can be said to amount to an official policy of inaction; and
> (4) that the School Board's custom was the "moving force" or direct causal link in the constitutional deprivation.

> ... The *Monell* custom requirement is an essential element of this claim. The evidence must show that the need to act is so obvious that the School Board's "conscious" decision not to act can be said to amount to a "policy" of deliberate indifference to Doe's constitutional rights.

> *Doe v. Claiborne*, 103 F.3d at 508 (internal citations omitted).

The court's analysis is at the Motion to Dismiss phase, where Plaintiff need only establish a set of facts that plausibly asserts the custom, policy or procedure on behalf of Defendant Tri-C that led to Plaintiff's constitutional violation. Here, Plaintiff has easily done so. First, Plaintiff has adequately plead a number of policies, practices and customs of allowing sexual harassment, sexual grooming, sexual abuse, and sexual misconduct to continue to occur without any corrective action. (ECF#1-1. at ¶¶111-112). These policies, practices, and customs include, "(a) failing to report adult-on-student sexual harassment, sexual grooming, sexual abuse, sexual discrimination, sexual assault, and rape to appropriate authorities; (b) failing to cure or even attempt to cure obvious known risks to Plaintiff at Cuyahoga Community College; (c) failing to communicate any precautions, directives, or educational materials that might be utilized between parent and child to identify inappropriate conduct that occurred between any student and adult, whether generally or specifically in relation to Terence Greene; and (d) allowing Terence Greene to have unsupervised contact with Plaintiff without conducting, documenting, and concluding a competent investigation into the allegations and specific facts brought to light prior to that time" Id.

Further and more specifically, Defendant Tri-C, through it's agents, have a clear policy, practice and custom of ignoring and violating their own policies and procedures, by failing to conduct or review background checks, and failing to conduct drug tests on their employees. Id. at 67-68, 77-78. Further, Defendants had all been put on notice of Greene's lying on his application, the allegations from former students, and his ineligibility of being rehired at CSA, prior to Greene being hired, and being allowed unsupervised, unfettered access to children. Id at ¶29, 30, 62. All of this with prior actual knowledge of the prior sexual abuse allegations against Greene when he was employed by the Cleveland School of the Arts. Id. at ¶29-30, 60-63, 67-69, 75-78, 82-83, 87-88, 91. Despite this prior actual knowledge of Greene's prior allegations of sexual assault and abuse, Tri-C, through its policies, practices and customs, allowed Greene full unsupervised access to minor students, including allowing him to take students out to dinner, drive them home, and in the case of John Doe, drive them back to his house. Id.; ECF#1-1 at ¶¶41-43. Defendant Tri-C also maintained a policy, practice and/or custom of not training or supervising its employees, including, employees that were specifically charged with the safety and wellbeing of minor children. Id. at ¶¶68, 115.

Defendants, in their Motion to Dismiss, alleged that Plaintiff's only evidence of deliberate indifference was the decision to hire Terence Greene. (See ECF#6-1 at 11). This is not true, however, as Plaintiff has alleged substantially more. Specifically, the decision to hire Terence Greene with the knowledge and actual notice that they had of Greene's history and propensity to assault children, the lack of training and supervision of Terence Greene in not just hiring him, but allowing him unsupervised, unfettered access both in and outside of the school environment and the failure to follow their own policies and procedures. The "evidence showing an obvious, deliberate indifference to sexual abuse," as required by *Claiborne Cnty.,* was the entire action of Tri-C in hiring, and then failing to supervise, and granting Greene access to minor children for a period of years, including Plaintiff John Doe. Id. at ¶29-30, 60-63, 67-69, 75-78, 82-83, 87-88, 91.

Certainly, Plaintiff John Doe has alleged a set of facts that plausibly establishes that a policy, practice or custom engaged in by Tri-C was proximately responsible for the sexual abuse he suffered at the hands of Tri-C's employee, Terence Greene. *Monell, supra.* Tri-C, through its employees, hired Terence Greene with full knowledge of his extensive history of sexually abusing children, and then, failed to train, supervise or oversee his actions in any way at all. This failure directly led to Greene again sexually assaulting a minor, this time, plaintiff John Doe. Thus, as a plausible *Monell* claim has been established, Defendants' Motion to Dismiss must be denied.

**B.      Plaintiff's § 1983 Individual Claims Do Not Fail as a Matter of Law.**

       **1.      The Complaint Does Not Fail to State a 42 U.S.C. § 1983 Claim Against the Individual Defendants and the Individual Defendants are not Entitled to Qualified Immunity.**

Plaintiff Doe also named seven Individual Defendants, five of which have joined in Defendant's Motion to Dismiss, alleging similar violations of his constitutional rights, while the Individual Defendants were acting under the color of law. Defendants' assertion in its motion to dismiss starts with the premise that the Individual Defendants cannot be liable because they did not have any knowledge of Greene's abuse of Doe. (ECF#6-1 at 12). However, it is not a requirement to maintain a 42 U.S. §1983 claim against the Individual Defendants that they have notice of the specific attack on Plaintiff by Greene.

As with the claims above, the preliminary determination of Doe's claim requires Plaintiff to show (1) a deprivation of a federal right (2) committed by an individual acting under color of law. As clearly articulated above, Doe has plausibly asserted a constitutional violation in his Complaint, as he was sexually assaulted by his teacher, Defendant Terence Greene.

*Claiborne*, *supra*, offers guidance on evaluating individual capacity claims against individual school employees in the context of sexual assault allegations.

Under the title of "DEROGATION OF *DUTIES* BY PRISON OFFICIALS" we held that

> [the section] 1983 liability of supervisory personnel must be based on more than the right to control employees. Section 1983 liability will not be imposed solely upon the basis of *respondeat superior*. There must be a showing that the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it.

*Id.* at 421 (emphasis added). "At a minimum," we held, a "plaintiff must show that a supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate." *Id.* This holding followed section 1983's requirement that the person sought to be held accountable actually have "caused" the deprivation, and was based on the fact that the individual defendants had supervisory responsibilities.

*Doe v. Claiborne* 103 F.3d at 511

Here, Plaintiff has plausibly alleged that at the very least, Defendants Cox, Friscioni and Smith all had supervisory responsibilities over Defendant Greene, and that all of the implicitly authorized, approved and/or knowingly acquiesced in allowing Defendant Greene unsupervised access to minor students, including John Doe. (ECF #1-1. at ¶¶). All the while, knowing full well, with their actual knowledge, of his history of sexual abuse of minor students. Id. at ¶¶ 3, 4, 5, 29-30, 60-63, 67-69, 75-78, 82-83, 87-88, 91.

Defendants next argue that even if they had violated Plaintiff's constitutional rights under the color of state law, somehow the right that they violated was not clearly established in the circuit at the time of the violation. Under the shield of qualified immunity, individual defendants cannot be held liable under §1983 unless (1) Plaintiff John Doe's liberty interest under the substantive due process component of the Fourteenth Amendment, and (2) the individual defendant's duty with respect to John Doe's constitutional right were "clearly established" at the time the events took place. *Doe v. Taylor Independent Sch. Dist.* 15 F.3d 443 (5th Cir. 1994).

Defendants improperly ask this Court to apply a summary judgment analysis as to the applicability of qualified immunity at the 12(b)(6) Motion to Dismiss stage. (ECF#6-1 at 14-16). A

12(b)(6) analysis concerns, "not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Davis Next Friend LaShonda D. v. Monroe Cty. Bd. Of Educ.*, 526 U.S. 629, 654 (1999). Accordingly, whether analyzing qualified immunity at the pleading stage, the Court must determine (1) whether the facts alleged make out the violation of a constitutional right and (2) whether the right at issue was "clearly established" at the time of the alleged violation. *Gavitt v. Born*, 835 F.3d 623, 640 (6th Cir. 2016); *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). Plaintiff has carried this burden. His constitutional right to bodily integrity was violated and this right was fully recognized in the Sixth Circuit at the time of his assault. *Doe v. Claiborne Cnty., Tenn. By & Through Claiborne Cnty. Bd. of Educ.*, 103 F.3d 495, 508 (6th Cir. 1996).

Accordingly, Plaintiff John Doe has sufficiently plead a plausible violation of his constitutional rights by the individual defendants while acting under the color of law, and that right was clearly established at the time of the violation. As such, Defendants' motion to dismiss must be denied.

## III.  PLAINTIFF'S STATE LAW CLAIMS DO NOT FAIL AS A MATTER OF LAW

### A.  Defendants Brown and Williams Are Not Immune from Liability on Plaintiff's State Law Claims.

Defendants Charlene Brown and Philip Williams assert that they are immune from tort liability pursuant to R.C. 2744.02 *et seq*. Employees of political subdivisions, such as the Individual Defendants, are entitled to immunity absent three exceptions enumerated in R.C. 2744.03(A)(6). The applicable exceptions include if (2) the employee's acts or omissions were malicious, in bad faith, or wanton or reckless; or (3) if liability is expressly imposed on the employee by a section of the Revised Code. R.C. 2744.03(A)(6). Here, Plaintiff properly alleges that the Individual

Defendants' acts were malicious, in bad faith, wanton and reckless. (ECF#1-1. at ¶¶35-36, 41-43, 98, 128-132).

**1.    The Individual Defendants Acted with Malice, in Bad Faith, Wantonly and Recklessly**

Here, Plaintiff has alleged and plead facts to support that the acts of the Individual Defendants were at the very least wanton or reckless. All of Plaintiff's allegations against the Individual Defendants contain allegations of wanton and reckless conduct. <u>Id</u>.

Wanton conduct is defined as the failure to exercise any care toward those to whom a duty of care is owed in circumstances in which there is great probability that harm will result. *Anderson v. Massillon*, 134 Ohio St.3d 380 (2012). Reckless conduct is characterized by the conscious disregard of or indifference to a known or obvious risk of harm to another that is unreasonable under the circumstances and is substantially greater than negligent conduct. *Id*.

The Complaint alleges clearly that Defendants Brown and Williams were fully aware of Defendant Terence Greene's repeated and persistent sexual abuse and harassment of minor children. ECF#1-1. at ¶¶ 129-132, 135-136. That they were employees of Tri-C, teachers to Plaintiff John Doe, and that they witnessed Defendant Greene's sexually abusive behavior and did nothing to stop it was, as alleged, malicious, in bad faith, wanton and reckless. Accordingly, they are not entitled to immunity and Defendants Motion to Dismiss should be denied.

**B.    R.C. 2151.421 Claim**

Defendant asserts that because Plaintiff never told Defendants Brown and Williams about his assault, that they did not have a duty to report under R.C. 2151.421. (ECF#6-1 at p. 18) However, this statute, R.C. 2151.421, mandates reporting not just instances of actual abuse, but also if a child under eighteen years of age "faces a threat of" abuse. Here, by virtue of their knowledge of Defendant Greene's history of sexually abusing children, as mandatory reporters, Defendants

Charlene Brown and Phillip Williams had a nondelegable duty to report Greene and protect the students under their care and in failing to report Greene, they violated R.C. 2151.421. Plaintiff has asserted a set of facts that plausibly asserts Defendants' failure of these duties, and thus Defendants' Motion to Dismiss must be denied.

### C.    Intentional Infliction of Emotional Distress Claim (IIED)

To establish a claim for IIED, a plaintiff must allege a set of facts that plausibly establishes: (1) the defendant intended to cause, or knew or should have known that his actions would result in serious emotional distress; (2) the defendant's conduct was so extreme and outrageous that it went beyond all possible bounds of decency and can be considered completely intolerable in a civilized community; (3) the defendant's actions proximately caused psychological injury to the plaintiff; and (4) the plaintiff suffered serious mental anguish of a nature no reasonable person could be expected to endure. *Marconi v. Savage*, 2013-Ohio-3805 (8th Dist. 2013).

Here, Plaintiff's allegations alleged a plausible claim. Defendant's Brown and Williams knew or should have known that their failure to stop Terence Greene from assaulting Plaintiff John Doe would result in serious emotional distress. Subjecting any minor child to sexual assault by an adult teacher is plausibly extreme and outrageous enough that it exceeds the bounds of decency in a civilized community. Finally, the actions of Defendant's Brown and Williams in allowing this to occur proximately caused psychological injury and mental anguish that no reasonable person should be expected to endure. Accordingly, this claim does not fail, and Defendants' Motion to Dismiss should be denied.

## CONCLUSION

For the reasons stated above, all of Plaintiff's claims have merit and Defendants have failed to demonstrate otherwise. Accordingly, this Court should deny Defendants' Motion to Dismiss.

*/s/ Kyle B. Melling*

**RYAN H. FISHER (0043799)**
**KYLE B. MELLING (0091208)**
Lowe Scott Fisher Co., L.P.A.
1660 West Second Street
610 Skylight Office Tower
Cleveland, OH 44113-1454
(216) 781-2600
(216) 781-2610 *facsimile*
RFisher@lsflaw.com
KMelling@lsflaw.com

## CERTIFICATE OF COMPLIANCE WITH L.R. 71.

This case has not been assigned a track, and this Memorandum adheres to the page limitations set forth in L.R. 7.1(f). Pursuant to 28 U.S.C. §1746, I certified under penalty of perjury that the foregoing is true and correct.

Executed on November 2, 2022.

*/s/ Kyle B. Melling*
**KYLE B. MELLING (0091208)**
Lowe Scott Fisher Co., L.P.A.

## CERTIFICATE OF SERVICE

I hereby certify that on this 2nd day of November, 2020, the foregoing was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.

*/s/ Kyle B. Melling*
**KYLE B. MELLING (0091208)**
Lowe Scott Fisher Co., L.P.A.