**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **JOHN DOE I,** | ) | **CASE NO. 1:22CV1287** |
| | ) | |
| **Plaintiff,** | ) | **SENIOR JUDGE** |
| | ) | **CHRISTOPHER A. BOYKO** |
| **vs.** | ) | |
| | ) | **OPINION AND ORDER** |
| **CUYAHOGA COUNTY** | ) | |
| **COMMUNITY COLLEGE, et al.,** | ) | |
| **Defendants.** | ) | |

**CHRISTOPHER A. BOYKO, SR. J.**:

This matter comes before the Court upon the Motion (ECF DKT #6) of Defendants Cuyahoga Community College, Emanuela Friscioni, Amber Smith, Paul Cox, Charlene Brown and Phillip Williams to Dismiss Plaintiff's Complaint against them. For the following reasons, the Motion is granted.

## I. FACTUAL BACKGROUND

The above-captioned case was removed to Federal Court from the Common Pleas Court of Cuyahoga County on July 20, 2022. Plaintiff John Doe filed his Complaint under a pseudonym because the prosecution of the lawsuit will reveal intimate details of a teacher-student sexual assault. At the time of the alleged assault, Plaintiff was 17 years old. Plaintiff

seeks recovery pursuant to Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681, *et seq*.; 42 U.S.C. § 1983; and Ohio statutes and common-law for sexual assault and violation of his constitutional rights committed by his instructor, Defendant Terence Greene.

Defendant Cuyahoga County Community College ("Tri-C") is a public community college with four campuses.  Tri-C was the recipient of federal financial assistance for the educational programs and activities it offered to students like Plaintiff.

Defendant Emanuela Friscioni is sued in her individual and official capacity, was the director of the Creative Performing Arts Academy at Tri-C and was an individual responsible for hiring Terence Greene.

Defendant Amber Smith is sued in her individual and official capacity, was a Human Resources Representative and was an individual responsible for hiring Terence Greene.

Defendant Paul Cox is sued in his individual and official capacity, was Dean of the Tri-C Creative Arts Department (which included Tri-C Creative Arts Academy) and was an individual responsible for hiring Terence Greene.

Defendant Terence Greene was an employee and/or agent of Defendant Tri-C and was Academy Manager, Teacher and Choreographer for Tri-C Creative Arts Academy.

Defendant Charlene Brown is sued in her individual and official capacity, was an employee and/or agent of Defendant Tri-C and served as Ballet Mistress and Dance Etiquette Instructor for Tri-C Creative Arts Academy.

Defendant Antonio Brown is sued in his individual and official capacity, was an employee and/or agent of Defendant Tri-C and served on the faculty of Tri-C Creative Arts Academy.

-2-

Defendant Phillip Williams is sued in his individual and official capacity, was an employee and/or agent of Defendant Tri-C and served on the faculty of Tri-C Creative Arts Academy.

Plaintiff's Complaint recites background information about Defendant Greene which predates his tenure at Tri-C:

Beginning in 1999, Defendant Greene worked as a dance director at the Cleveland School of the Arts ("CSA").  In 2002, allegations surfaced from a 14 year-old CSA student that Defendant Greene had sexually assaulted the student.  In September 2003, Defendant Greene was indicted on four counts of Unlawful Sexual Conduct with a Minor.  The Indictment was reported in the Cleveland Plain Dealer.  Following a Bench Trial, Defendant Greene was acquitted on July 1, 2004, on all four counts.

Defendant Greene returned as a dance director at CSA and remained there until 2014.

On December 7, 2011, a 33-year-old male filed a police report with the City of Cleveland, alleging that his uncle, Defendant Greene, repeatedly assaulted him from the time he was 7 years old.  No formal charges were ever brought.

In July of 2014, two former CSA students alleged illegal criminal sexual contact or assault by Defendant Greene when he was their teacher.  On September 10, 2014, Defendant Greene was terminated from his position at CSA.

On September 2, 2015, Defendant Greene submitted an application to work as a dance instructor at Defendant Tri-C.  The reason he gave for leaving his earlier position at CSA was: "I started my own company and pursued other job opportunities."  (Complaint, ECF DKT #1-1 at ¶ 27).

Defendant Amber Smith requested a basic background check from a screening company called "Truescreen." *Id.* at ¶ 28.  The October 2, 2015 report identified the reason Defendant Greene left his prior employment as:  "The subject was terminated."  In addition, Defendant Greene was not eligible for re-hire because:  "The subject had allegations with students."  *Id.* at ¶ 29.

On October 8, 2015, Defendant Amber Smith sent a letter to Defendant Greene which confirmed an offer of employment for the "part-time position of Instructor Dance at Cuyahoga Community College," effective October 12, 2015, and contingent upon "satisfactory completion of a background clearance and drug screen."  Defendant Greene accepted.  *Id.* at ¶ 30.

On February 21, 2017, Defendant Amber Smith sent Defendant Greene a letter offering him "the full-time position of Program Manager Dance Mastery," contingent again upon the satisfactory completion of a background clearance and drug screen.  Defendant Greene accepted.  *Id.* at ¶¶ 32-33.

Defendant Greene continued as Program Manager at Tri-C until he was terminated on or about January 21-22, 2020.

Plaintiff enrolled in the Tri-C Creative Arts Academy as a dance student in 2015, when he was 13 or 14 years old.  The Dance Program was an after-school program conducted from 4:30 p.m. to 9:00 p.m. on weekdays.

In 2018, Plaintiff was promoted from the beginner to the intermediate level and Defendant Greene became Plaintiff's primary modern dance instructor.

On October 17, 2019, Defendant Greene took several dance students for pizza

-4-

following an evening rehearsal.  After dinner, Defendant drove Plaintiff and Defendant Charlene Brown back to Tri-C in Defendant Brown's car.  Plaintiff understood that Defendant Greene would drive him home from there.  *Id*. at ¶ 43.  Instead, Defendant Greene took Plaintiff to Greene's house "to teach him a gospel dance."  *Id*.

Defendant Greene directed Plaintiff to his basement where he sexually assaulted Plaintiff.  All of Defendant Greene's acts were without Plaintiff's consent.  "Upon information and belief, Greene was infected with the HIV virus."  *Id*. at ¶ 49.  At the time, Plaintiff was below the legal age of consent.  Within days, Plaintiff quit dancing and quit the Tri-C program.

Plaintiff reported the incident to his former high school advisor in January of 2020, who reported the assault to Child Protective Services and to Plaintiff's mother.  On January 11, 2020, Plaintiff's mother filed a report with the Garfield Heights Police Department.

On or about January 21-22, 2020, Tri-C terminated Defendant Greene's employment, "because of Plaintiff's allegations and according to Tri-C documents, because of the results of Greene's 2015 background check."  *Id*. at ¶ 56.

According to Plaintiff's Complaint:  "As a direct and proximate result of the actions and/or inactions of Tri-C and its administrators and staff, including Defendant Friscioni, Defendant Smith, Defendant Cox, Defendant Charlene Brown, Defendant Antonio Brown and Defendant Williams, Tri-C hired and continued to employ Terence Greene, who had a 13-year history of allegations of sexual assault against students and who was terminated by his previous employer for similar allegations from students."  *Id.* at ¶ 57.

Defendants Tri-C, Friscioni, Smith, Cox, Charlene Brown and Williams filed their

Motion to Dismiss pursuant to Fed.R.Civ.P. 12(b)(6) on September 2, 2022.  The issues have been fully briefed and are ripe for ruling.

## II. LAW AND ANALYSIS

### Fed.R.Civ.P. 12(b)(6) Standard of Review

"In reviewing a motion to dismiss, we construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007).  Factual allegations contained in a complaint must "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007).  *Twombly* does not "require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Id*. at 570.

"Plausibility is a context-specific inquiry, and the allegations in the complaint must 'permit the court to infer more than the mere possibility of misconduct,' namely, that the pleader has 'show[n]' entitlement to relief." *Center for Bio-Ethical Reform*, *Inc. v. Napolitano*, 648 F.3d 365, 369 (6th Cir. 2011).

Dismissal is warranted if the complaint lacks an allegation as to a necessary element of the claim raised.  *Craighead v. E.F. Hutton & Co.*, 899 F.2d 485 (6th Cir. 1990).

The United States Supreme Court, in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), discussed *Twombly* and provided additional analysis of the motion to dismiss standard:

> In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there

-6-

are well-plead factual allegations a court should assume their veracity
and then determine whether they plausibly give rise to an entitlement
to relief.  *Id*. at 679.

The pleading does not have to demonstrate probability; rather, "just enough factual

information to create an expectation that discovery will uncover evidence supporting the

claim."  *Haber v. Rabin*, No. 1:16CV546, 2016 WL 3217869, at *3 (N.D.Ohio Jun.10, 2016),

citing *Twombly*, 550 U.S. at 556.

## Title IX liability

Title IX provides that, "[n]o person in the United States shall, on the basis of sex, be

excluded from participation in, be denied the benefits of, or be subjected to discrimination

under any education program or activity receiving Federal financial assistance."  20 U.S.C.

§ 1681(A).  "Title IX is enforceable through a judicially implied private right of action,

through which monetary damages are available."  *Doe v. Miami Uni*versity, 882 F.3d 579, 589

(6th Cir. 2018) (quoting *Klemencic v. Ohio State University*, 263 F.3d 504, 510 (6th Cir.

2001)).

The United States Supreme Court has concluded that sexual harassment is a form of

discrimination for Title IX purposes.  *Davis  v. Monroe County Bd. of Education*, 526 U.S.

629, 649-650 (1999).  Furthermore, "funding recipients are properly held liable in damages

only where they are deliberately indifferent to sexual harassment, of which they have actual

knowledge, that is so severe, pervasive, and objectively offensive that it can be said to deprive

the victims of access to the educational opportunities or benefits provided by the school."  *Id*.

at 650.

In the First Cause of Action, Plaintiff's Complaint alleges deliberate indifference and

hostile educational environment claims against Defendants Tri-C, Friscioni, Smith and Cox in violation of Title IX, 20 U.S.C. § 1681(a), *et seq*.  However, Title IX has been "interpreted as not authorizing suit against school officials, teachers and other individuals." *Fitzgerald v. Barnstable School Committee*, 555 U.S. 246, 257 (2009).  The Sixth Circuit has specifically held that Title IX does not impose personal liability on individuals, only on recipients of federal funds. *Campbell v. Dundee Community Schools*, 661 Fed. App'x 884, 888 (6th Cir. 2016).  Therefore, the Title IX claims in the First Count of the Complaint, alleged against Defendant Emanuela Friscioni, Defendant Amber Smith and Defendant Paul Cox individually, are dismissed.

As for the Title IX claims against Defendant Tri-C, Plaintiff's Complaint unfortunately fares no better.

**<u>Deliberate Indifference under Title IX</u>**

To sustain a claim for Deliberate Indifference under Title IX, a plaintiff must allege that:  "(1) [he] was sexually harassed by a teacher or professor, (2) an official with authority to take corrective action had actual notice of the harassment, (3) the school's response was clearly unreasonable, and (4) the school's deliberate indifference caused [him] to suffer discrimination." *Wamer v. University of Toledo*, 27 F.4th 461, 471 (6th Cir. 2022), citing *Gebser v. Lago Vista Independent School District*,  524 U.S. 274, 290-91 (1998).

Generally, a plaintiff  "can satisfy the causation requirement by showing that (1) following the school's unreasonable response (2) (a) the plaintiff experienced an additional instance of harassment or (b) an objectively reasonable fear of further harassment caused the plaintiff to take specific reasonable actions to avoid harassment, which deprived the plaintiff

of the educational opportunities available to other students." *Wamer,* 27 F.4th at 471.

Plaintiff alleges that Defendant Tri-C had "actual and constructive notice of Defendant Greene's history of sexual allegations by students" and was "deliberately indifferent to the fact that their own Dance Program Manager, Defendant Terence Greene, had been terminated from his previous job teaching minor children because of allegations with students." (Complaint, ECF DKT #1-1 at ¶ 60). Plaintiff also claims that Defendant Tri-C failed to investigate Defendant Greene's previous employment following the background check, and failed to follow up on Defendant Greene's lack of candor on his application as to why he left employment at CSA. According to Plaintiff, this conduct amounted to deliberate indifference. (*Id.* at ¶¶ 61-63). Plaintiff alleges that: "The sex-based harassment suffered by Plaintiff was severe, pervasive and objectively offensive." (*Id.* at ¶ 65). In violation of its own policies and the requirements of Title IX, Defendant Tri-C hired Defendant Greene without the successful completion of a background check and drug screen. (*Id.* at ¶ 68). Plaintiff claims that Defendant betrayed Plaintiff's trust with deliberate indifference by ignoring, hiding, disregarding or failing to disclose circumstances "that raised a substantial likelihood that other students, including but not limited to Plaintiff, would be assaulted, harassed, abused and preyed upon by Defendant Greene." (*Id.* at ¶¶ 79-81). Defendant Tri-C and its administrators with authority to impose corrective measures, failed to do so. (*Id.* at ¶ 82).

For purposes of their Motion to Dismiss, Defendants do not dispute that Defendant Greene sexually assaulted Plaintiff.

Reviewing the relevant allegations, the Court is unable to glean sufficient facts to support the contention that the individual Defendants had the authority to take corrective

action for Title IX purposes.  In ¶ 86 of the Complaint, Plaintiff alleges that his counsel made

a Public Records Request; yet, "it is impossible to piece together the author of some of the

records and the identity of all persons referred to in the records."  Plaintiff admits that it is

"impossible to fully understand the circumstances surrounding Terence Green's hiring and

termination from Tri-C at this time."  *Id*.

Two of the moving Defendants, Charlene Brown and Phillip Williams, were fellow

faculty members in the Tri-C Creative Arts Academy.  Plaintiff describes HR representative

Amber Smith as someone responsible for hiring Defendant Greene; but that seems to be the

extent of her alleged authority.  On the other hand, the Court can reasonably infer that Paul

Cox as Dean of the Creative Arts Department, and Emanuela Friscioni as Director of the

Creative Performing Arts Academy, would have the power to take corrective action; but, they

likely did make the ultimate decision to terminate Defendant Greene.

The third element of Plaintiff's Title IX Deliberate Indifference claim is actual notice

or knowledge of the sexual harassment perpetrated by Defendant Greene.  Title IX imposes

liability only for a funding recipient's "own official decision[s]" and not "for its employees'

independent actions."  *Gebser*, 524 U.S. at 290–91; *Bose v. Bea*, 947 F.3d 983, 990 (6th Cir.

2020).  "[I]t would frustrate the purposes of Title IX to permit a damages recovery against a

school [] ... based on principles of respondeat superior or constructive notice."  *Gebser*, 524

U.S. at 285.

Plaintiff claims that Tri-C and its administrators had actual and constructive notice of

Defendant Greene's history of sexual allegations by minor students against him.  (ECF

DKT#1-1 at ¶ 60).  Even if Defendants had constructive notice, that level of notice does not

support Title IX liability.  *Gebser*, *id*.

In addition, actual notice of Defendant Greene's *history* is similarly not the notice or knowledge necessary under Title IX.  Defendant Greene's *history* includes a 2004 indictment, bench trial and acquittal; a 2011 Cleveland Police report without any formal charges; and "allegations with students" leading to Greene's termination from CSA.  Defendant Greene did not begin employment with Defendant Tri-C until 2015.

 "Title IX's plain language confines the scope of prohibited conduct based on the recipient's degree of control over the harasser and the environment in which the harassment occurs."  *Davis*, 526 U.S. 629, 644.  "Moreover, because the harassment must occur 'under' 'the operations of' a funding recipient, see 20 U.S.C. § 1681(a); § 1687 (defining "program or activity"), the harassment must take place in a context subject to the [school's] control."  *Davis*, 526 U.S. at 645.  Actual notice or knowledge of sexual harassment within the institution receiving federal funding is what is required for liability.  *Wamer*, 27 F.4th at 471, citing *Gebser,* 524 U.S. at 290-91.

Notice of Defendant Greene's *history* years before his employment with Tri-C and while subject to the control of another educational institution, even if plausibly attributed to Defendants, fails to satisfy the Title IX actual notice element.

Next, to maintain the Deliberate Indifference Claim, Plaintiff must sufficiently allege that the school's response was clearly unreasonable.  According to the Complaint, Plaintiff reported the October 2019 sexual assault to a former high school advisor in January 2020.  (ECF DKT #1-1 at ¶ 54).  The advisor reported it to Child Protective Services and to Plaintiff's mother, who made a report to police on January 11, 2020.  There is no factual

allegation of when Defendant Tri-C learned of the assault; but Defendant Greene was terminated on January 21 or January 22, 2020, within a month of Plaintiff reporting it.

The Court is confident, therefore, that Defendant Tri-C's response to the sexual assault that occurred within its dance program was not clearly unreasonable in time nor in the nature of discipline.

The final element of Plaintiff's claim is whether Defendant Tri-C's alleged deliberate indifference caused Plaintiff to experience an additional instance of harassment or to take specific reasonable actions to avoid harassment, depriving him of the educational opportunities available to other students.  Plaintiff's Complaint is devoid of any allegations of further sexual assaults and Plaintiff sadly chose to quit the dance program very soon after the incident, but before Plaintiff reported it to anyone.  (See ECF DKT #1-1 at ¶ 69).

Plaintiff alleges that Defendant Tri-C failed to follow its own policies and neglected to investigate and follow up on Defendant Greene's background report.  The Supreme Court has declined the invitation to impose liability under what amounts to a negligence standard --- holding the defendant institution liable for failing to react to teacher-student harassment of which it *should have* known.  (Emphasis added).  *Davis*, 526 U.S. at 642; *Gebser*, 524 U.S. at 283.  The Title IX funds recipient "must merely respond to known peer harassment in a manner that is not clearly unreasonable.  This is not a mere "reasonableness" standard." *Davis*, 526 U.S. at 648-649.

**Hostile Environment under Title IX**

In *Doe v. Claiborne County, Tenn. By and through Claiborne County Bd. Of Educ.*, 103 F.3d 495 at 515 (6th Cir. 1996), the Sixth Circuit instructs that a "hostile environment"

sexual harassment claim is cognizable under Title IX.  See also, *Franklin v. Gwinnett County Public Schools*, 503 U.S. 60, 112 S.Ct. 1028, 117 L.Ed.2d 208 (1992).  In addition, the elements necessary to state a supervisory hostile environment claim under Title VII equally apply under Title IX.  See *Pierce v. Commonwealth Life Ins. Co.*, 40 F.3d 796 (6th Cir.1994).

> To establish a sexually hostile environment claim, a plaintiff must allege:
>
> (1) [he or she] was a member of a protected class; (2) [he or she] was subjected to unwelcomed [sic] sexual harassment in the form of sexual advances, requests for sexual favors, or other verbal or physical conduct of a sexual nature; (3) the harassment complained of was based upon sex; (4) the charged sexual harassment had the effect of unreasonably interfering with [his or her educational] performance and creating an intimidating, hostile, or offensive [educational] environment; and (5) the existence of respondeat superior liability.

*Thomas v. Meharry Med. Coll.*, 1 F.Supp.3d 816, 825 (M.D. Tenn. 2014) (citing *Highlander v. K.F.C. Nat'l Mgmt. Co.*, 805 F.2d 644, 649 (6th Cir.1986)(quoting *Rabidue v. Osceola Ref. Co.*, 805 F.2d 611, 619–20 (6th Cir.1986)), abrogated on other grounds)).

"Under this theory of liability, the plaintiff must allege that his educational experience was "permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive [so as] to alter the conditions of the victim's" educational environment." *Doe v. Miami University*, 882 F.3d 579, 590 (6th Cir. 2018).

Upon careful review, the Court finds that Plaintiff's allegations do not satisfy the standard for Title IX hostile environment liability.  Although Defendant Greene's alleged conduct was indisputably severe and objectively offensive, Plaintiff has not shown the

requisite pervasiveness.  Aside from echoing the "pervasive" language in ¶ 65 and elsewhere in the Complaint, Plaintiff relates only one incident.  Also, despite alleging the likelihood that other students would be assaulted, harassed and preyed upon by Defendant Greene, Plaintiff offers no facts supporting other incidents or reports made known to Defendant Tri-C or its administrators.  (ECF DKT #1-1 at ¶ 79).

Plaintiff alleges that he was subjected to harassment/discrimination on the basis of his sex and "was treated, upon information and belief, differently from the way he would have been treated [] had he been female."  (ECF DKT #1-1 at ¶ 90).  Such allegations do not provide a plausible claim for Title IX hostile environment.  "If the sexual conduct complained of would be equally offensive to male and female students, it does not support a Title IX sexual harassment claim because "both men and women were accorded like treatment." *Rabidue*, 805 F.2d at 620 (citing *Henson v. City of Dundee*, 682 F.2d 897, 904 (11th Cir.1982)).

After construing the Complaint in the light most favorable to Plaintiff, accepting its allegations as true, and drawing all reasonable inferences in favor of Plaintiff, the Court finds that dismissal of the First Cause of Action for violations of Title IX is warranted.

## 42 U.S.C. § 1983 liability

In the Second Cause of Action, Plaintiff alleges violations of 42 U.S.C. § 1983 against all Defendants.

## Official capacity claims

Defendants contend that Plaintiff's claims against individual Defendants Friscioni, Smith, Cox, Charlene Brown and Williams in their official capacities should be dismissed.

-14-

Official capacity suits "represent only another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985), quoting *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 690, n. 55 (1978). "As long as the government entity receives notice and an opportunity to respond, an official capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Graham*, 473 U.S. at 166, citing *Brandon v. Holt*, 469 U.S. 464, 471-72 (1985).

Therefore, since Defendants Friscioni, Smith, Cox, Charlene Brown and Williams are employed by Defendant Tri-C, and since Tri-C has been named and served with notice of the suit, Plaintiff's claims against the individual Defendants in their official capacities are dismissed as duplicative of claims against Defendant Tri-C.

To sustain an action under 42 U.S.C. § 1983, a plaintiff must show that the conduct complained of was committed by a person acting under color of state law; and that the conduct deprived the plaintiff of a federal constitutional or statutory right. *See Haines v. Saginaw Police Dept*., 35 F.3d 565 (6th Cir. 1994) (citing *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149 (1978)).  Deprivation of a plaintiff's rights, privileges, or immunities secured by the Constitution and federal laws is the threshold requirement of a Section 1983 action.

Plaintiff alleges that Defendants' conduct deprived him of his constitutional rights of personal security, bodily integrity, liberty and equal protection interests under the Fourteenth Amendment.  The Sixth Circuit spoke to these specific constitutional rights:

> The substantive component of the Due Process Clause protects students against abusive governmental power as exercised by a school.  See *Howard v. Grinage*, 82 F.3d 1343, 1349 (6th Cir.1996).  To be sure, the magnitude of the liberty deprivation that sexual abuse inflicts upon the victim is an abuse of governmental power of the most fundamental sort; it is an unjustified intrusion

-15-

that strips the very essence of personhood.  If the "right to bodily integrity" means anything, it certainly encompasses the right not to be sexually assaulted under color of law.  This conduct is so contrary to fundamental notions of liberty and so lacking of any redeeming social value, that no rational individual could believe that sexual abuse by a state actor is constitutionally permissible under the Due Process Clause.  *Doe v. Claiborne County*, 103 F.3d at 506-507.

Plaintiff alleges that Defendants Cox, Friscioni, Smith, Charlene Brown and Williams "knew that Plaintiff was at a severe risk of harm of being sexually abused by Greene." (Complaint, ECF DKT #1-1 at ¶ 98).  "While Plaintiff was being sexually abused, assaulted and raped by Greene, Defendants were aware of the abuse." *Id.* at ¶ 99.  Defendants "turned a blind eye," failed to respond" and "acted with deliberate indifference to the rights of Plaintiff." *Id.* at ¶ 100.  "The conduct of Defendants fostered a climate to flourish where Plaintiff was left vulnerable to and actually was subject to sexual abuse, sexual discrimination and sexual grooming by Green [sic], an agent, servant, volunteer and/or employee of Defendant Tri-C." *Id.* at ¶ 102.

Plaintiff contends that he has plausibly alleged that, at the very least, Defendants Cox, Friscioni and Smith had supervisory responsibilities over Defendant Greene.  (Opposition Brief, ECF DKT #9 at 21).  With knowledge of his history of sexual abuse of minor students, they allowed him unsupervised access to minors at Tri-C like Plaintiff. *Id.*

"Liability for a failure to act necessarily implies a "duty" to carry out the action the person is accused of derogating." *Doe v. Claiborne County*, 103 F.3d at 511.  "[T]he relevant question for purposes of section 1983 liability in this context is whether the duty to have taken some action is of such a nature that the individual's inaction will render him responsible for the constitutional harm." *Id.*

-16-

Plaintiff's Second Cause of Action makes allegations against Defendants as a group, not against any specific Defendant.  Plaintiff fails to allege how any of these moving Defendants particularly were involved in the decision to hire Defendant Greene, what their supervisory duties were or what knowledge they each possessed of his history.  Tellingly, Plaintiff admits that "it is impossible to fully understand the circumstances surrounding Terence Greene's hiring and termination from Tri-C at this time."  (Complaint, ECF DKT #1-1 at ¶ 86).

"A supervisor cannot be held liable simply because he or she was charged with overseeing a subordinate who violated the constitutional rights of another." *Peatross v City of Memphis*, 818 F.3d 233, 241-42 (6th Cir. 2016).  The Sixth Circuit has long held that supervisory liability requires some "active unconstitutional behavior" on the part of the supervisor. *Id*.; *Bass v. Robinson*, 167 F.3d 1041, 1048 (6th Cir.1999); *see also Hays v. Jefferson Cty.*, 668 F.2d 869, 873–74 (6th Cir.1982).  "[A] supervisory official's failure to supervise, control or train the offending individual is not actionable unless the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it." *Id.; Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999).

Even if Defendants were "sloppy, reckless, or neglectful in the performance of their duties," that is not enough for Section 1983 liability. *Doe v. Claiborne County*, 103 F.3d at 513.  At a minimum, Plaintiff must show that one or more of the Defendants " implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct." *Peatross, id.*; *Shehee, id.*

The Court determines that Plaintiff's allegations in the Second Cause of Action do not

-17-

permit the Court to infer plausible entitlement to relief under 42 U.S.C. § 1983 against

Defendants Cox, Friscioni, Smith, Williams and Charlene Brown.

### ***Monell* liability**

In the Third Cause of Action, Plaintiff asserts liability under *Monell* against Defendant

Tri-C.  Plaintiff alleges:  "Defendant Tri-C established, through both action and inaction,

widespread policies, practices and customs of allowing sexual harassment, sexual grooming,

sexual abuse and sexual misconduct to continue to occur without corrective action."

(Complaint, ECF DKT #1-1 at ¶ 111).

In *Monell*, the Supreme Court clarified those "persons" Congress intended should fall

within the purview of 42 U.S.C. § 1983.  As the Supreme Court instructed over a decade later

in *Collins v City of Harker Heights, Texas*, 503 U.S. 115, 120-21 (1992):  "Section 1983

provides a remedy against "any person" who, under color of state law, deprives another of

rights protected by the Constitution.  In *Monell*, the Court held that Congress intended

municipalities and other local government entities to be included among those persons to

whom § 1983 applies."

Plaintiff alleges that Defendant Tri-C had policies and practices of failing to report

adult-on-student sexual harassment to authorities; failing to cure obvious known risks to

Plaintiff at Tri-C; failing to communicate precautions or educational materials about

inappropriate conduct to parents; allowing Defendant Greene unsupervised contact with

Plaintiff without conducting a thorough investigation into prior allegations; and failing to

properly train employees on mandated investigative requirements.  (Complaint, ECF DKT

#1-1 at ¶¶ 112-115).

Plaintiff primarily claims that Defendant Tri-C had the unconstitutional custom and policy of failing to act to prevent sexual abuse.  To state a *Monell* claim against Defendant Tri-C under an "inaction" theory, Plaintiff must establish:

(1) the existence of a clear and persistent pattern of sexual abuse by school employees;

(2) notice or constructive notice on the part of the school;

(3) the school's tacit approval of the unconstitutional conduct, such that deliberate indifference in its failure to act can be said to amount to an official policy of inaction; and

(4) that the school's custom was the "moving force" or direct causal link in the constitutional deprivation.

See *City of Canton v. Harris*, 489 U.S. 378, 388–89, 109 S.Ct. 1197, 1204–05, 103 L.Ed.2d 412 (1989).

"Deliberate indifference" in this context does not mean a collection of sloppy, or even reckless, oversights; rather, it means an obvious, deliberate indifference to sexual abuse.  See *Doe v. Claiborne County,* 103 F.3d at 508.  A failure to investigate further does not amount to a custom on which to base constitutional tort liability.  *Id*.

The Court has already determined that there are no plausible allegations of a persistent pattern of sexual abuse by the Tri-C employee, Terence Greene.  Even with a liberal reading of the Complaint, Defendant Tri-C had no actual or constructive notice of abusive sexual conduct by Defendant Greene until Plaintiff reported it in January of 2020.  The failure or neglect to pursue investigation of Defendant Greene's prior employment history does not rise

-19-

as a matter of law to the level of official policy or custom.  With Plaintiff's skeletal claims, the Court cannot conclude that any Tri-C policy or custom is a "moving force" or causal link to constitutional deprivation of Plaintiff's rights.

Plaintiff alleges that Defendant Tri-C failed to properly train and supervise its employees as to required investigations.  (Complaint, ECF DKT #1-1 at ¶ 115).  A complaint may set forth a cognizable claim for failure to train " by providing prior instances of unconstitutional conduct reflecting that the [state actor] ignored a history of abuse, and was on notice that the training in this particular area was deficient and likely to cause injury." *Fisher v. Harden*, 398 F.3d 837, 849 (6th Cir. 2005).  A plaintiff may additionally be able to "show that such a training failure has the "'highly predictable consequence' of constitutional violations of the sort plaintiff suffered." *Gregory v. City of Louisville*, 444 F.3d 725, 753 (6th Cir. 2006)(citation omitted).  Unfortunately, such plausible allegations are lacking here.

The Court finds that Plaintiff's allegations in the Third Cause of Action do not permit the Court to infer plausible entitlement to relief under 42 U.S.C. § 1983 against Defendant Tri-C.

### III. CONCLUSION

For these reasons, the Motion (ECF DKT #6) of Defendants Cuyahoga Community College, Emanuela Friscioni, Amber Smith, Paul Cox, Charlene Brown and Phillip Williams to Dismiss Plaintiff's Complaint against them is granted.

The above-captioned case was removed to Federal Court because of original jurisdiction over Title IX, 20 U.S.C. § 1681, *et seq*. and 42 U.S.C. § 1983.  By this ruling, the Court has dismissed the Title IX and § 1983 claims as set forth in the First, Second and Third

Causes of Action in Plaintiff's Complaint pursuant to Fed.R.Civ.P. 12(b)(6).  The remaining four Causes of Action are Ohio statutory and common law claims.

The Court declines to exercise supplemental jurisdiction over the Ohio claims and remands the above-captioned case to Cuyahoga County Common Pleas Court for further proceedings.

**IT IS SO ORDERED.**

**DATE: February 10, 2023**

**s/Christopher A. Boyko**
**CHRISTOPHER A. BOYKO**
**Senior United States District Judge**